Plaintiff: Annette Chisholm vs (PWC) PriceWaterHouse Coopers LLC
Mary Saslow's
Warren Holding

Amended

January 12, 2020

In this case the plaintiff Annette Chisholm has made a claim under the Federal Civil rights statue (section 1981) that prohibits discrimination against an employee because of a persons race.

Specifically Annette Chisholm claims that she was racially discriminated against by two of PwC's leadership team Warren Holding and Mary Saslow because of plaintiffs race.

PwC denies that Annette was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case.

2020-CA-304

DIV F

On the issue of race discrimination the plaintiff Annette Chisholm was singled out and the only individual on the entire Ethics and Compliance team not allowed to move to a flexible work arrangement after the six month in office period prescribed by leadership. On 1/3/2017 via telephone her Manger Maureen Greene Chege (a black Kenyan) who sat in the firms NJ office at the time advised her that she would not be able to work from home.  Maureen advised her "leadership" felt like there were areas that needed improvement.  The plaintiff then asked her what those areas were and Maureen replied "Katherine you're supervisor will tell you".  When the plaintiff asked Katherine Israel (white Jewish female) her supervisor what the areas of improvement were, Katherine replied she didn't feel like she should have been prevented from working from home.  She was not given any specific reason nor asked prior to Warren Holding's (white South African male) decision to prevent the plaintiff from moving to a flexible work arrangement.  Katherine, the plaintiff's supervisor sat in the Tampa office close in proximity to the plaintiff and the defendant Warren/PwC.  Keep in mind the entire firm workforce is a flexible work arrangement.  Employees must reserve hotel/seating on in office days.  The job the plaintiff was hired for on the Ethics and compliance clearances team was a flexible work arrangement.  The team had White females (on operations team) on legitimate HR performance improvement plans what the firm calls a "PIP", who were allowed to work from home.  Also please find the plaintiffs performance snapshot enclosed for the period in which she was denied a flexible work arrangement due to "work performance".

Further on the issue of racial discrimination the defendant Mary Saslow/PwC hostile and abusive tone and acts were never directed towards the plaintiffs back up support Shelley Bartlett who is white.  Only the plaintiff was subjected to threats to call her manager from March 2017 until the plaintiff left on disability leave.  The defendant Mary did follow through reaching out to the Plaintiffs manager Gavin Mitchell

1

once.  She defendant Mary Saslow/PwC emailed the plaintiffs manager after an overly aggressive conversation with the plaintiff where she made good on her threat.  In the email Mary asked Gavin about document editing. The defendant had spoken to the plaintiff via the phone who advised her that she was not a expert in the particular program Mary needed assistance with but could find a colleague who could or use the firms document production to ensure a timely turnaround.  This is the standard procedure in the ASC. The plaintiff's manager gave her the same response as Annette did minutes earlier.  The defendant Mary only provided one performance feedback to Gavin.  In that feedback via phone Mary asked the plaintiff's manager "what does Annette do?".  The plaintiff had previously provided her the standard menu of services and 2 biographies (one video one written) when she began supporting Mary.  Mary was well informed on the plaintiff's time with the firm, jobs, education background to personal hobbies and family members.  The defendant Mary did not provide any negative or adverse work performance issues during the initial feedback and never provided any feedback to subsequent managers, in spite of her apparent dissatisfaction with the plaintiff.

On the issue of Hostile and abusive work environment.  Please find enclosed emails from the plaintiff to defendant/PwC Human Resources and Ethics and compliance in regards to Warren's discriminatory actions.  The plaintiff still does not know the reason she was prevented from joining the entire team in moving to a flexible work arrangement.  The plaintiff Annette remained in the office with no guidance, no instruction nor acknowledgement of wrong doing from 1/3/17 until she started a new role 2/2/17.  No corrective action was taken.  The defendant Warren Holding was promoted to director shortly after.  On the same issue as in regards to the defendant Mary Saslow/PwC.  Mary was extremely tactful with her hostility and abuse by using the firms Google hangouts to send threatening and intimidating messages of aggression ending with immediately or urgent prompting the plaintiff to call her as to not leave a trace or paper trail. The plaintiff was out on bereavement after two deaths one week apart.  During her leave from work the defendant Mary made changes to her travel reservations.  The day the plaintiff returned to work Mary aggressively accused her of canceling her flight.  On a telephone call Mary accused the plaintiff three times.  Mary still not believing Annette she then made the plaintiff call AMEX travel on 3 way to find out the flight had not been cancelled.  The plaintiff did not go to HR after the incident but did tell her manager. Keep in mind the plaintiff got no remedy nor neutrality from her previous HR/Ethics and Compliance complaints and she knew the process to remove Mary from her desk would take time.  The plaintiff felt the PwC work environment had become too stressful and toxic and began taking a toll on her physically and emotionally so she took the short-term disability benefits on 01/18/2019.

The plaintiff is seeking compensatory damages in the amount of $33 million dollars. The plaintiff has been medically diagnosed with PTSD, Depression, Anxiety and insomnia by a psychiatrist. In addition to loss of enjoyment of life, the plaintiff suffered embarrassment and humiliation in both the work office and the home office. The plaintiff went two years without filing taxes, late on bills, lack of physical exercise. Please keep in mind that the plaintiff is also a disabled veteran and single mother and suffers from thyroid disease. Management of stress plays a huge part in managing thyroid disease and she was a very physically fit individual a runner, boxer and snowboarder. The plaintiff suffered several thyroid crisis episodes as a result of the stress having to have her daily dosage of synthroid adjusted each time. The plaintiff is mindful of the stress so much to the extent that she left PwC in 2014 after suffering a medical emergency, divorce and death of a close friend to heal. The plaintiffs' cousin (like a sister) was diagnosed with cancer a week after the first discrimination incident took place involving the defendant Warren. The plaintiff says she went into fight or flight mode and ended up in another hostile discriminatory work environment with Mary. The plaintiff returned to work December 18, 2018 after her cousin succumbed to cancer. The same day back from bereavement/vacation Mary belligerently accused Annette of cancelling a flight she made while the plaintiff was out. The plaintiff was turned down by two psychiatrists who would not treat her without medication both stated that the issues were too compounded to not treat without medication. She ended up being prescribed medication after finding a Holistic Psychiatrist whom she is currently under the care of and paying out of pocket because the insurance would not cover this provider. The plaintiff was terminated from employment from PwC on 12/23/2019 after her long-term disability was denied. She is working to appeal the denial with the insurance company. The plaintiff has suffered financial hardships that have caused her to depend on public assistance and outreach programs for food stamps assistance and help with utilities. The emotional distress has been severe to the point it's affected the plaintiffs family relationships all in the midst of healing, grieving and coping with unavoidable life issues, compounded with having to see Warren on in office days and dealing with Mary and being made to feel uncomfortable working from home. The plaintiff truly tried to make it work after the first incident by moving to another role only to have that same negative element appear again and make her time at PwC incredibly hard.

The plaintiff is asking the court to consider punitive damages. PwC is a very large global firm and has an impeccable reputation for being a leader in diversity and it's efforts to build trust in society and solve important problems. The deliberate ill actions of the defendants Mary and Warren/PwC are not in line with the firm's core values (act with integrity, make a difference, care, work together). Nor are they in line with the firm's professional framework, which is applicable for staff and leadership regardless of level. Warren is

3

a global transfer from South Africa and has managed large groups of individuals with his time managing the Service Delivery Center primarily comprised of young people fresh out of college. It's extremely hard to comprehend that he would need additional "coaching" on performance improvement and disciplinary actions or not reach out to HR when in question to ensure he was acting within firm policies or procedures. Leading one to believe the defendants actions were deliberate with ill intent directly solely at the plaintiff. The same goes for Mary she has been employed with the firm for over 32 years no bad day or personal struggle/issue can justify their actions/behavior in a workplace setting. Their actions undermine the firm's initiative to build a diverse and inclusive work environment instead their actions create a liability for the firm. The plaintiff has been employed with the firm for over 10 years and has no disciplinary actions or behavioral issues in the workplace and she has had a turbulent 3 years since rejoining PwC and did not act out in the workplace. The plaintiff felt like it was what the defendants wanted her to do and live up to a "stereotype" to justify their ill actions. The plaintiff in her role prior to going out on leave supported 2 Partners and 5 Managing Directors and knows what good leadership that aligns with the firms core values and framework looks like and carried herself with decorum while working.

Attachments enclosed
\# HR Complaint
\# Ethics & Compliance complaint
\# Performance Review

4

# 1

---------- Forwarded message ----------
From: Annette Chisholm (US – IFS) <                    >
Date: Mon, Feb 13, 2017 at 10:01 AM
Subject: Re: E&C Clearances Team
To: Jessica Raniolo (US – IFS) <                    >


Hi Jessica,  I'm back in the office today.  My calendar is up
to date and I'm available at your earliest convenience.  Look
forward to speaking with you.

Kind regards,
Annette


On Wed, Feb 1, 2017 at 9:20 PM, Jessica Raniolo (US – IFS)
<                    > wrote:
Hi Annette,

I am sorry to hear you are still not doing well. Please let me
know once you are back and I will set up some time to connect
further on this concern that you have raised and determine
appropriate next steps.

Thank you,
Jessica



101 Hudson Street, Jersey City, New Jersey, 07302

Office: (201) 521-4408 Cell: 914-494-5517
Email:



On Wed, Feb 1, 2017 at 2:30 PM, Annette Chisholm (US – IFS)
<                    > wrote:

Hi Jessica,

I'm still not 100%, it's been a stressful situation and I
start my new role Monday.  I have medical issues that become
aggravated by stress.

My biggest concern is why was I was the only coordinator
unable to work from home?  It is my assumption that the emails
I forwarded you are why.  I also ask that you please talk to
other E&C teammates about the meeting that took place in my

absence.  I know for sure that Norris and Rachel were in the meeting and both said that Warrens tone on the matter made everyone in the room feel uncomfortable.  I  can not speak to it only that it was a honest mistake on my part.  I also know that I was not the only person to make that error.

Regards,
Annette


On Wed, Feb 1, 2017 at 8:40 AM Jessica Raniolo (US — IFS)
<                          > wrote:
Hi Annette,

Hope you are feeling better and I am sorry to hear you are not feeling well! Thank you for the note. When you are back, I think it would be best to set up some time to connect so I can better understand your concern.

Please let me know when you are feeling better and back at work and I will set something up.

Thank you,
Jessica


101 Hudson Street, Jersey City, New Jersey, 07302

Office: (201) 521-4408 Cell: 914-494-5517
Email:


On Mon, Jan 30, 2017 at 12:32 PM, Annette Chisholm (US — IFS) <                          > wrote:

Hi Jessica, There is a matter I would like to make you aware

of.  I am a coordinator on the E&C

Clearances team.  After the holiday break

I was told I could not work from home. I was the only coordinator that

couldn't.  I asked

Maureen would she tell me the reason and she said she would

rather my

supervisor sr associate Katharine did.

She assured me that it wasn't need for worry it was not like I made

errors in work performance and she felt confident it was something I could

get or improve on.  In my opinion and

Maureen's tone it seemed as though she delivered the message reluctantly.

I had my opinion on the reason I was unable to work from

home.  It wasn't until I shared the news

with my team members Norris & Rachel they gave me their opinion based on a vacation

matter that was discussed in a meeting by Warren.   I was

out on vacation and forgot to update the team calendar, I was not the only

person per Maureen and it was supposedly mentioned in the meeting.   I've heard that the tone of the meeting made

everyone very uncomfortable.   I was not

in the office so cannot speak to what was said in a meeting to make them voice

their opinion to me.  This issue has caused me great stress both

physically and emotionally. Last week I had a conversation with Katharine who

told me she voiced her opinion on how she thought it was unfair.  This has been the consensus of people who have

spoken to me about my not being able to work from home.

I have accepted another role internally and will be starting

2/6.  I was sick with a cold/flu virus

and came into the office twice to interview for jobs outside
of E&C.  We've had several issues on our team and one
individual was fired.  A majority of

my time on the team was stressful to the extent it aggravated
pre-existing

health/medical issues.  I didn't feel as though

it was in my best interest to speak up earlier until I had a
full time permanent role with PwC.   I've been with PwC 9

years and have never been treated like this especially with no
valid explanation or

reason.  If it is not my work

performance, what is it?  I am out today

I've taken a sick day.  Please feel free

to call me at your convenience my cell is 813-391-5369


Annette Chisholm

PwC Ethics & Compliance
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607


Thoughts don't need paper to take shape

--
Annette Chisholm

PwC Ethics & Compliance
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607


Thoughts don't need paper to take shape




--
Annette Chisholm

PwC | Administrative Support Concierge
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607


Thoughts don't need paper to take shape

The information transmitted, including any attachments, is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of, or taking of any action in reliance upon, this
information by persons or entities other than the intended
recipient is prohibited, and all liability arising therefrom

is disclaimed. If you received this in error, please contact the sender and delete the material from any computer. PricewaterhouseCoopers LLP is a Delaware limited liability partnership. This communication may come from PricewaterhouseCoopers LLP or one of its subsidiaries

#2

---------- Forwarded message ----------
From: Annette Chisholm (US - IFS) <                    >
Date: Wed, Apr 5, 2017 at 5:09 PM
Subject: Re: Connect
To: Steve Kessler (US - IFS) <                    >

Thank you for the update Steve.
On Wed, Apr 5, 2017 at 3:42 PM, Steve Kessler (US - IFS) <                    > wrote:

Annette,

Thank you for raising your concerns.

Len Assante, E&BC Manager, will be reaching out to you to discuss the concerns you set forth in the email below.

Thanks again.

Steve
On Thu, Mar 30, 2017 at 12:32 PM, Annette Chisholm (US - IFS) <                    > wrote:

Hi Steve, Hope you're

well.  I did speak with Jessica earlier this week.  I am still

unclear of why I was singled out and unable to work from home out of all the

coordinators as well as the entire E&C team.  The reason Jessica

provided was "Leadership felt that I was not progressing with my peers and

could benefit being in the office longer."   Please keep in mind I

have been with PwC for over 9 years approximately 2 1/2 of those working from

home.  I asked if this decision was based on speaking to my immediate

supervisor Katharine and manager Maureen as they would be best to determine my

work quality versus the Leadership Warren and/or Allison.  She responded

yes...she also mentioned my snapshots.  I have one complete snapshot from

Jun-Aug and one that has been acknowledged by Katherine from Oct- Jan.  So again I'm confused

as to what the decision was based on.  I do not believe Maureen nor

Katharine were consulted or asked about my work performance or 'progression' prior to the decision.

I'm now even more

inclined to believe the decision was made deliberately and consciously.  I feel as though Warren may have a blind spot when it comes to diverse individuals.  I had a conversation with Norris Dicks who is the sole remaining coordinator on clearances previously.  Norris wanted to apply for the senior associate role on clearances and like every coordinator that left clearances for other roles reached out to Warren. His conversation with Warren was very different from the other coordinators.  He was given the same blanket leadership reasoning of why he was not ready for progression that I received from Jessica.  My response and advice to him was to reach out to our manager Maureen and his supervisor to find out the specifics.

If I had any issues

with my work performance/ progression I should've been made aware of the specific areas.  I asked for those areas Maureen could not provide any and my assumption is because Warren/leadership never provided a reason.  How could I have been re-evaluated at a month without knowing what the initial factor that kept me from working from home was?  I would like to know what facts Warren and/or Leadership based the decision on.  I'm very mindful of my personal and professional brand.  This matter was and is still is

a stressful one, the resolution provided by Jessica is disheartening and not

justification of my unfair treatment.   I would greatly appreciate

any assistance you could provide in the matter.


Kind Regards,


Annette

On Sun, Mar 26, 2017 at 11:22 AM, Steve Kessler (US - IFS) <                    > wrote:

Anette,

Thanks for following up.  I will get back to you.

Steve

On Wed, Mar 22, 2017 at 11:49 AM, Annette Chisholm (US - IFS) <                    > wrote:

Hi Steve, Hope all is well.  Just touching base to see if a reason was given on my being the only individual
on the entire team unable to work from home?
Kind Regards,

Annette
On Thu, Mar 2, 2017 at 10:03 AM, Steve Kessler (US - IFS) <                    > wrote:

Annette, thanks for sending.  Looking forward to speaking with you.

Steve
On Thu, Mar 2, 2017 at 9:29 AM, Annette Chisholm (US - IFS) <                    > wrote:

Hi Steve, I've forwarded some of the emails from my interaction with Jessica.  Thanks for taking the time
to connect and discuss the issue.  During my phone conversation I did not get the 'neutral' perspective on
the issue I had anticipated.  I felt as if Jessica made excuses for the behavior and at one point gave her
personal opinion on how she didn't think Warren would not do something like that intentionally. The fact
still remains, I still was never given a reason on why I was the only coordinator unable to work from
home.  I look forward to our conversation.

Kind Regards,

**Annette Chisholm**

**PwC | Administrative Support Concierge**
**Office:              | Cell:**
**Email:**
**PricewaterhouseCoopers LLP**
**4040 W Boy Scout Blvd, Tampa FL 33607**


**Thoughts don't need paper to take shape**



# HILLSBOROUGH COUNTY
# SHERIFF'S OFFICE
## CIVIL PROCESS SECTION

**CIVIL # HS 2020-7552**

**CASE # 20-CA-304**
**Court : CIRCUIT COURT CIVIL**

**DATE/TIME RECEIVED :** 03/06/2020 10:01    **DATE RETURNED :** 06/03/2020

**TYPE OF PROCESS :** AMENDED SUMMONS, COMPLAINT

ANNETTE CHISHOLM
1902 SPRUCE ST W
TAMPA,  FL  33607

HILLSBOROUGH COUNTY, FLORIDA

**PLAINTIFF(S)**
ANNETTE CHISHOLM

**DEFENDANT(S)**
PRICE WATERHOUSE COOPERS LLC

---

**ATTEMPT TO SERVE #1**

**SUBJECT:** PRICE WATERHOUSE COOPERS LLC
**DATE/TIME:** 03/12/2020  10:05
**BY:** 232343 - SOTO, HERBERT
**ADDRESS:** 4040 BOY SCOUT BL W, TAMPA
**REMARKS:** BUILDING IS EMPTY ONLY SECURITY IS THERE

---

**ATTEMPT TO SERVE #2**

**SUBJECT:** PRICE WATERHOUSE COOPERS LLC
**DATE/TIME:** 03/13/2020  07:50
**BY:** 232343 - SOTO, HERBERT
**ADDRESS:** 4040 BOY SCOUT BL W, TAMPA
**REMARKS:** PER ANNETTE 813-391-5369 TRY OGC

---

**ATTEMPT TO SERVE #3**

**SUBJECT:** PRICE WATERHOUSE COOPERS LLC
**DATE/TIME:** 03/13/2020  10:35
**BY:** 232343 - SOTO, HERBERT
**ADDRESS:** 4040 BOY SCOUT BL W, TAMPA
**REMARKS:** BIULDING CLOSED UNTIL 26 MARCH

---

**ATTEMPT TO SERVE #4**

**SUBJECT:** PRICE WATERHOUSE COOPERS LLC
**DATE/TIME:** 05/21/2020  10:18
**BY:** 232343 - SOTO, HERBERT
**ADDRESS:** 4040 BOY SCOUT BL W, TAMPA
**REMARKS:** CLOSED

---

**Electronically Filed (HCSO): Hillsborough County/13th Judicial Circuit at: 06/03/2020 10:30:44 AM**



# HILLSBOROUGH COUNTY
## SHERIFF'S OFFICE
CIVIL PROCESS SECTION

Civil # HS 2020-7552

Case # 20-CA-304
Court : CIRCUIT COURT CIVIL

---

**ATTEMPT TO SERVE #5**

| | |
|---|---|
| **SUBJECT:** | PRICE WATERHOUSE COOPERS LLC |
| **DATE/TIME:** | 05/26/2020  08:07 |
| **BY:** | 232343 - SOTO, HERBERT |
| **ADDRESS:** | 4040 BOY SCOUT BL W, TAMPA |
| **REMARKS:** | BUILDING CLOSED |

---

**ATTEMPT TO SERVE #6**

| | |
|---|---|
| **SUBJECT:** | PRICE WATERHOUSE COOPERS LLC |
| **DATE/TIME:** | 06/01/2020  10:40 |
| **BY:** | 232343 - SOTO, HERBERT |
| **ADDRESS:** | 4040 BOY SCOUT BL W, TAMPA |
| **REMARKS:** | NOT SERVED CLOSED DUE TO COVID UNKNOWN WHEN REOPENING |

---

**DEFENDANT PRICE WATERHOUSE COOPERS LLC - UNSERVED**                    RETURNED OUTSTANDING/SERVABLE

| | |
|---|---|
| **DATE/TIME:** 06/01/2020 10:40 | **BY:** 232343 - SOTO, HERBERT |
| **ADDRESS:** | 4040 BOY SCOUT BL W, TAMPA |
| **REASON:** | NON SERVICE - ATTEMPTS MADE |
| **REMARKS:** | NOT SERVED CLOSED DUE TO COVID UNKOWN WHEN REOPENING |

---

Filing # 120442706 E-Filed 01/28/2021 04:38:49 PM

**IN THE CIRCUIT COURT OF THE THIRTEETNH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

**ANNETTE CHISHOLM,**                                    **CASE NO: 20-CA-304**

       **Plaintiff,**

**v.**

**PRICEWATERHOUSECOOPERS LLP,**
**MARY SASLOW, and**
**WARREN HOLDING,**

       **Defendants.**

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COME NOW Defendants, PricewaterhouseCoopers LLP ("PwC"), Mary Saslow ("Saslow"), and Warren Holding ("Holding") (collectively "the Defendants"), by and through their undersigned counsel, and hereby move to dismiss Plaintiff, ANNETTE CHISHOLM's ("Plaintiff") Amended Complaint for failure to serve process within the time period specified by Florida Rule of Civil Procedure 1.070(j). In support of the instant motion, Defendants state as follows:

1.      On January 13, 2020, Plaintiff filed her Complaint in this Court, alleging race discrimination in violation of 28 U.S.C. § 1981. The Complaint is attached hereto as **Exhibit A**.

2.      On March 6, 2020, Plaintiff filed an Amended Complaint. The Amended Complaint is attached hereto as **Exhibit B.**

3.      To date, Plaintiff has not served the Defendants with the Complaint or the Amended Complaint.

4.      Furthermore, Plaintiff did not file a motion for an extension of time to serve her pleadings upon the Defendants.

5.      Florida Rule of Civil Procedure 1.070(j) states:

> If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading directed to that defendant the court, on its own initiative after notice or on motion, shall direct that service be effected within a specified time or shall dismiss the action without prejudice or drop that defendant as a party; provided that if the plaintiff shows good cause or excusable neglect for the failure, the court shall extend the time for service for an appropriate period. When a motion for leave to amend with the attached proposed amended complaint is filed, the 120-day period for service of amended complaints **on the new party or parties** shall begin upon the entry of an order granting leave to amend . . ."

Fla. R. Civ. P. 1.070(j) (2020) (emphasis supplied)

6.      The trial court shall extend the time for service when a plaintiff shows good cause for failure to serve process within 120 days of the filing of the initial pleading. *Roberts v. Stidham*, 19 So.3d 1155, 1157 (Fla. 5th DCA 2009). However, where no good cause for failing to meet the 120-day deadline has been shown, the trial court has broad discretion either to extend the time for service, or to dismiss the action without prejudice. *Id*. If reasonable cause for the delay in service is not documented, dismissal is required. *Id.* at 1158 (*citing Root v. Little*, 721 So.2d 836, 837 (Fla. 5th DCA 1998)).

7.      Reasonable cause for delay in service may be demonstrated if Plaintiff can show diligent efforts to locate the Defendants. *See e.g. Hyppolite v. American Tower Asset Sub, LLC*, 2020 WL 6037245 (S.D. Fla. June 24, 2020) (applying Florida law) (holding there was reasonable cause for the delay in service where plaintiff used investigators, attempted to serve defendant at multiple addresses and pursued substitute service through the Secretary of State before eventually personally serving the defendant); *see also Roberts v. Stidham*, 19 So.3d 1155 (Fla. 5th DCA 2009) (reversing trial court's dismissal of plaintiff's complaint because plaintiff demonstrated reasonable

cause for delay in service where his process server filed an affidavit documenting all failed attempts to serve the defendants, including personally attempting to serve the complaint on at least ten different occasions, leaving a business card on defendants' door and speaking with a neighbor to inquire about defendants' whereabouts).

8.     The Affidavit of Non-Service filed by the Hillsborough County Sherriff on June 3, 2020, attached hereto as **Exhibit C**, clearly demonstrates that PwC's Tampa location has been closed due to the COVID-19 pandemic, and therefore the process server was unable to effect the service on PwC at that location. Based on the review of the Circuit Court docket, Plaintiff made no other attempts to locate PwC's registered agent to effect service of her Amended Complaint on PwC, nor did she make any attempts to serve Saslow or Holding.

9.     More than a year has passed since Plaintiff filed her initial Complaint on January 13, 2020, and more than ten months have passed since Plaintiff filed her Amended Complaint on March 6, 2020. The Defendants were named as the Defendants in both Complaints.

10.    It is apparent that Plaintiff made no diligent efforts to serve PwC, Saslow or Holding with her Amended Complaint, and there is no reasonable cause for the delay in service. Accordingly, pursuant to Rule 1.070(j), Fla.R.Civ.P., the dismissal of the instant action is warranted.

WHEREFORE, the Defendants respectfully requests that this Honorable Court grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

DATED: January 28, 2021.

Respectfully submitted,

*/s/ Peter W. Zinober*
Peter W. Zinober

Florida Bar No. 121750
Maja A. Hartzell
Florida Bar No. 1022333
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
100 N. Tampa Street, Suite 3600
Tampa, Florida 33602
Telephone: (813) 289-1247
Facsimile:  (813) 289-6530
Primary: peter.zinober@ogletree.com
         maja.hartzell@ogletree.com
Secondary:  suzette.taborellie@ogletree.com
         denise.banach@ogletree.com
         shelley.franz@ogletree.com
         tamdocketing@ogletree.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of January, 2021, the foregoing was filed with the Clerk of the Court via CM/ECF, and a true and correct copy was sent via U.S. mail to Plaintiff, Annette Ruth Chisholm, at her last known address at:

    1902 West Spruce Street
    Tampa, FL 33607

        */s/ Peter W. Zinober*_____
        Attorney

                45751230.1

# Exhibit "A"

Plaintiff Annette Chisholm
vs
Defendant PwC Mary Saslow & Warren Holding

January 12, 2020

In this case the plaintiff Annette Chisholm has made a claim under the Federal Civil rights statue (section 1981) that prohibits discrimination against an employee because of a persons race.

Specifically Annette Chisholm claims that she was racially discriminated against by two of PwC's leadership team Warren Holding and Mary Saslow because of plaintiffs race.

PwC denies that Annette was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case.

2020-CA-364
DIV F

2020 JAN 13 PM 2: 31
CLERK OF THE
CIRCUIT COURT
COURTS

On the issue of race discrimination the plaintiff Annette Chisholm was singled out and the only individual on the entire Ethics and Compliance team not allowed to move to a flexible work arrangement after the six month in office period prescribed by leadership. On 1/3/2017 via telephone her Manger Maureen Greene (a black Kenyan) who sat in the firms NJ office at the time advised her that she would not be able to work from home. Maureen advised her "leadership" felt like there were areas that needed improvement. The plaintiff then asked her what those areas were and Maureen replied "Katherine you're supervisor will tell you". When the plaintiff asked Katherine Israel (white Jewish female) her supervisor what the areas of improvement were, Katherine replied she didn't feel like she should have been prevented from working from home. She was not given any specific reason nor asked prior to Warren Holding's (white South African male) decision to prevent the plaintiff from moving to a flexible work arrangement. Katherine, the plaintiff's supervisor sat in the Tampa office close in proximity to the plaintiff and the defendant Warren/PwC. Keep in mind the entire firm workforce is a flexible work arrangement. Employees must reserve hotel/seating on in office days. The job the plaintiff was hired for on the Ethics and compliance clearances team was a flexible work arrangement. The team had White females (on operations team) on legitimate HR performance improvement plans what the firm calls a "PIP", who were allowed to work from home. Also please find the plaintiffs performance snapshot enclosed for the period in which she was denied a flexible work arrangement due to "work performance".

Further on the issue of racial discrimination the defendant Mary Saslow/PwC hostile and abusive tone and acts were never directed towards the plaintiffs back up support Shelley Bartlett who is white. Only the plaintiff was subjected to threats to call her manager from March 2017 until the plaintiff left on disability leave. The defendant Mary did follow through reaching out to the Plaintiffs manager Gavin Mitchell

1

once.  She defendant Mary Saslow/PwC emailed the plaintiffs manager after an overly aggressive conversation with the plaintiff where she made good on her threat.  In the email Mary asked Gavin about document editing. The defendant had spoken to the plaintiff via the phone who advised her that she was not a expert in the particular program Mary needed assistance with but could find a colleague who could or use the firms document production to ensure a timely turnaround.  This is the standard procedure in the ASC. The plaintiff's manager gave her the same response as Annette did minutes earlier.  The defendant Mary only provided one performance feedback to Gavin.  In that feedback via phone Mary asked the plaintiff's manager "what does Annette do?". The plaintiff had previously provided her the standard menu of services and 2 biographies (one video one written) when she began supporting Mary.  Mary was well informed on the plaintiff's time with the firm, jobs, education background to personal hobbies and family members.  The defendant Mary did not provide any negative or adverse work performance issues during the initial feedback and never provided any feedback to subsequent managers, in spite of her apparent dissatisfaction with the plaintiff.

On the issue of Hostile and abusive work environment.  Please find enclosed emails from the plaintiff to defendant/PwC Human Resources and Ethics and compliance in regards to Warren's discriminatory actions.  The plaintiff still does not know the reason she was prevented from joining the entire team in moving to a flexible work arrangement.  The plaintiff Annette remained in the office with no guidance, no instruction nor acknowledgement of wrong doing from 1/3/17 until she started a new role 2/2/17.  No corrective action was taken. The defendant Warren Holding was promoted to director shortly after.  On the same issue as in regards to the defendant Mary Saslow/PwC.  Mary was extremely tactful with her hostility and abuse by using the firms Google hangouts to send threatening and intimidating messages of aggression ending with immediately or urgent prompting the plaintiff to call her as to not leave a trace or paper trail. The plaintiff was out on bereavement after two deaths one week apart.  During her leave from work the defendant Mary made changes to her travel reservations.  The day the plaintiff returned to work Mary aggressively accused her of canceling her flight.  On a telephone call Mary accused the plaintiff three times.  Mary still not believing Annette she then made the plaintiff call AMEX travel on 3 way to find out the flight had not been cancelled.  The plaintiff did not go to HR after the incident but did tell her manager. Keep in mind the plaintiff got no remedy nor neutrality from her previous HR/Ethics and Compliance complaints and she knew the process to remove Mary from her desk would take time.  The plaintiff felt the PwC work environment had become too stressful and toxic and began taking a toll on her physically and emotionally so she took the short-term disability benefits on 01/18/2019.

The plaintiff is seeking compensatory damages in the amount of $33 million dollars. The plaintiff has been medically diagnosed with PTSD, Depression, Anxiety and insomnia by a psychiatrist. In addition to loss of enjoyment of life, the plaintiff suffered embarrassment and humiliation in both the work office and the home office. The plaintiff went two years without filing taxes, late on bills, lack of physical exercise. Please keep in mind that the plaintiff is also a disabled veteran and single mother and suffers from thyroid disease. Management of stress plays a huge part in managing thyroid disease and she was a very physically fit individual a runner, boxer and snowboarder. The plaintiff suffered several thyroid crisis episodes as a result of the stress having to have her daily dosage of synthroid adjusted each time. The plaintiff is mindful of the stress so much to the extent that she left PwC in 2014 after suffering a medical emergency, divorce and death of a close friend to heal. The plaintiffs' cousin (like a sister) was diagnosed with cancer a week after the first discrimination incident took place involving the defendant Warren. The plaintiff says she went into fight or flight mode and ended up in another hostile discriminatory work environment with Mary. The plaintiff returned to work December 18, 2018 after her cousin succumbed to cancer. The same day back from bereavement/vacation Mary belligerently accused Annette of cancelling a flight she made while the plaintiff was out. The plaintiff was turned down by two psychiatrists who would not treat her without medication both stated that the issues were too compounded to not treat without medication. She ended up being prescribed medication after finding a Holistic Psychiatrist whom she is currently under the care of and paying out of pocket because the insurance would not cover this provider. The plaintiff was terminated from employment from PwC on 12/23/2019 after her long-term disability was denied. She is working to appeal the denial with the insurance company. The plaintiff has suffered financial hardships that have caused her to depend on public assistance and outreach programs for food stamps assistance and help with utilities. The emotional distress has been severe to the point it's affected the plaintiffs family relationships all in the midst of healing, grieving and coping with unavoidable life issues, compounded with having to see Warren on in office days and dealing with Mary and being made to feel uncomfortable working from home. The plaintiff truly tried to make it work after the first incident by moving to another role only to have that same negative element appear again and make her time at PwC incredibly hard.

The plaintiff is asking the court to consider punitive damages. PwC is a very large global firm and has an impeccable reputation for being a leader in diversity and it's efforts to build trust in society and solve important problems. The deliberate ill actions of the defendants Mary and Warren/PwC are not in line with the firm's core values (act with integrity, make a difference, care, work together). Nor are they in line with the firm's professional framework, which is applicable for staff and leadership regardless of level. Warren is

3

a global transfer from South Africa and has managed large groups of individuals with his time managing the Service Delivery Center primarily comprised of young people fresh out of college.   It's extremely hard to comprehend that he would need additional "coaching" on performance improvement and disciplinary actions or not reach out to HR when in question to ensure he was acting within firm policies or procedures. Leading one to believe the defendants actions were deliberate with ill intent directly solely at the plaintiff. The same goes for Mary she has been employed with the firm for over 32 years no bad day or personal struggle/issue can justify their actions/behavior in a workplace setting.  Their actions undermine the firm's initiative to build a diverse and inclusive work environment instead their actions create a liability for the firm.  The plaintiff has been employed with the firm for over 10 years and has no disciplinary actions or behavioral issues in the workplace and she has had a turbulent 3 years since rejoining PwC and did not act out in the workplace.  The plaintiff felt like it was what the defendants wanted her to do and live up to a "stereotype" to justify their ill actions.  The plaintiff in her role prior to going out on leave supported 2 Partners and 5 Managing Directors and knows what good leadership that aligns with the firms core values and framework looks like and carried herself with decorum while working.

Attachments enclosed

#1  HR complaint
#2  Ethics & Compliance complaint
#3  Performance Review

4

# #1

---------- Forwarded message ----------
From: Annette Chisholm (US - IFS) <                              >
Date: Mon, Feb 13, 2017 at 10:01 AM
Subject: Re: E&C Clearances Team
To: Jessica Raniolo (US - IFS) <                              >

Hi Jessica,  I'm back in the office today.  My calendar is up
to date and I'm available at your earliest convenience.  Look
forward to speaking with you.

Kind regards,
Annette

On Wed, Feb 1, 2017 at 9:20 PM, Jessica Raniolo (US - IFS)
<                         > wrote:
Hi Annette,

I am sorry to hear you are still not doing well. Please let me
know once you are back and I will set up some time to connect
further on this concern that you have raised and determine
appropriate next steps.

Thank you,
Jessica


101 Hudson Street, Jersey City, New Jersey, 07302

Office: (201) 521-4408 Cell: 914-494-5517
Email:


On Wed, Feb 1, 2017 at 2:30 PM, Annette Chisholm (US - IFS)
<                         > wrote:

Hi Jessica,

I'm still not 100%, it's been a stressful situation and I
start my new role Monday.  I have medical issues that become
aggravated by stress.

My biggest concern is why was I was the only coordinator
unable to work from home?  It is my assumption that the emails
I forwarded you are why.  I also ask that you please talk to
other E&C teammates about the meeting that took place in my

absence.  I know for sure that Norris and Rachel were in the
meeting and both said that Warrens tone on the matter made
everyone in the room feel uncomfortable.  I  can not speak to
it only that it was a honest mistake on my part.  I also know
that I was not the only person to make that error.

Regards,
Annette

On Wed, Feb 1, 2017 at 8:40 AM Jessica Raniolo (US — IFS)
<                              > wrote:
Hi Annette,

Hope you are feeling better and I am sorry to hear you are not
feeling well! Thank you for the note. When you are back, I
think it would be best to set up some time to connect so I can
better understand your concern.

Please let me know when you are feeling better and back at
work and I will set something up.

Thank you,
Jessica

101 Hudson Street, Jersey City, New Jersey, 07302

Office: (201) 521-4408 Cell: 914-494-5517
Email:

On Mon, Jan 30, 2017 at 12:32 PM, Annette Chisholm (US —
IFS) <                      > wrote:

Hi Jessica, There is a matter I would like to make you aware

of.  I am a coordinator on the E&C

Clearances team.  After the holiday break

I was told I could not work from home. I was the only
coordinator that

couldn't.  I asked

Maureen would she tell me the reason and she said she would

rather my

supervisor sr associate Katharine did.

She assured me that it wasn't need for worry it was not like I made

errors in work performance and she felt confident it was something I could

get or improve on.  In my opinion and

Maureen's tone it seemed as though she delivered the message reluctantly.


I had my opinion on the reason I was unable to work from

home.  It wasn't until I shared the news

with my team members Norris & Rachel they gave me their opinion based on a vacation

matter that was discussed in a meeting by Warren.   I was

out on vacation and forgot to update the team calendar, I was not the only

person per Maureen and it was supposedly mentioned in the meeting.  I've heard that the tone of the meeting made

everyone very uncomfortable.   I was not

in the office so cannot speak to what was said in a meeting to make them voice

their opinion to me.  This issue has caused me great stress both

physically and emotionally. Last week I had a conversation with Katharine who

told me she voiced her opinion on how she thought it was unfair.  This has been the consensus of people who have

spoken to me about my not being able to work from home.

I have accepted another role internally and will be starting

2/6.  I was sick with a cold/flu virus

and came into the office twice to interview for jobs outside
of E&C.  We've had several issues on our team and one
individual was fired.  A majority of

my time on the team was stressful to the extent it aggravated
pre-existing

health/medical issues.  I didn't feel as though

it was in my best interest to speak up earlier until I had a
full time permanent role with PwC.  I've been with PwC 9

years and have never been treated like this especially with no
valid explanation or

reason.  If it is not my work

performance, what is it?  I am out today.

I've taken a sick day.  Please feel free

to call me at your convenience my cell is 813-391-5369

Annette Chisholm

PwC Ethics & Compliance
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607

Thoughts don't need paper to take shape

--

Annette Chisholm

PwC Ethics & Compliance
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607


Thoughts don't need paper to take shape




--

Annette Chisholm

PwC | Administrative Support Concierge
Office: 813.577.4201 | Cell: 813.838.6428
Email:
PricewaterhouseCoopers LLP
4040 W Boy Scout Blvd, Tampa FL 33607


Thoughts don't need paper to take shape

The information transmitted, including any attachments, is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of, or taking of any action in reliance upon, this
information by persons or entities other than the intended
recipient is prohibited, and all liability arising therefrom

is disclaimed. If you received this in error, please contact the sender and delete the material from any computer. PricewaterhouseCoopers LLP is a Delaware limited liability partnership. This communication may come from PricewaterhouseCoopers LLP or one of its subsidiaries

# 2

---------- Forwarded message ----------
From: Annette Chisholm (US - IFS) <                    >
Date: Wed, Apr 5, 2017 at 5:09 PM
Subject: Re: Connect
To: Steve Kessler (US - IFS) <                >

Thank you for the update Steve.
On Wed, Apr 5, 2017 at 3:42 PM, Steve Kessler (US - IFS) <            > wrote:

Annette,

Thank you for raising your concerns.

Len Assante, E&BC Manager, will be reaching out to you to discuss the concerns you set forth in the email below.

Thanks again.

Steve
On Thu, Mar 30, 2017 at 12:32 PM, Annette Chisholm (US - IFS) <            > wrote:

Hi Steve, Hope you're

well.  I did speak with Jessica earlier this week.  I am still

unclear of why I was singled out and unable to work from home out of all the

coordinators as well as the entire E&C team.  The reason Jessica

provided was "Leadership felt that I was not progressing with my peers and

could benefit being in the office longer."   Please keep in mind I

have been with PwC for over 9 years approximately 2 1/2 of those working from

home.  I asked if this decision was based on speaking to my immediate

supervisor Katharine and manager Maureen as they would be best to determine my

work quality versus the Leadership Warren and/or Allison.  She responded

yes...she also mentioned my snapshots.  I have one complete snapshot from

Jun-Aug and one that has been acknowledged by Katherine from Oct- Jan.  So again I'm confused

as to what the decision was based on.  I do not believe Maureen nor

Katharine were consulted or asked about my work performance or 'progression'
prior to the decision..

I'm now even more
inclined to believe the decision was made deliberately and consciously.  I
feel as though Warren may have a blind spot when it comes to diverse
individuals.  I had a conversation with Norris Dicks who is the sole
remaining coordinator on clearances previously.  Norris wanted to apply
for the senior associate role on clearances and like every coordinator that
left clearances for other roles reached out to Warren. His conversation with
Warren was very different from the other coordinators.  He was given the
same blanket leadership reasoning of why he was not ready for progression that
I received from Jessica.  My response and advice to him was to reach out
to our manager Maureen and his supervisor to find out the specifics.

If I had any issues
with my work performance/ progression I should've been made aware of the
specific areas.  I asked for those areas Maureen could not provide any and
my assumption is because Warren/leadership never provided a reason.  How
could I have been re-evaluated at a month without knowing what the initial
factor that kept me from working from home was?  I would like to know what
facts Warren and/or Leadership based the decision on.  I'm very mindful of
my personal and professional brand.  This matter was and is still is

a stressful one, the resolution provided by Jessica is disheartening and not

justification of my unfair treatment.   I would greatly appreciate

any assistance you could provide in the matter.


Kind Regards,


Annette

On Sun, Mar 26, 2017 at 11:22 AM, Steve Kessler (US - IFS) <                    > wrote:

Anette,

Thanks for following up.  I will get back to you.

Steve

On Wed, Mar 22, 2017 at 11:49 AM, Annette Chisholm (US - IFS) <                    > wrote:

Hi Steve, Hope all is well.  Just touching base to see if a reason was given on my being the only individual
on the entire team unable to work from home?
Kind Regards,

Annette
On Thu, Mar 2, 2017 at 10:03 AM, Steve Kessler (US – IFS) <                          > wrote:

Annette, thanks for sending.  Looking forward to speaking with you.

Steve
On Thu, Mar 2, 2017 at 9:29 AM, Annette Chisholm (US – IFS) <                          > wrote:

Hi Steve, I've forwarded some of the emails from my interaction with Jessica.  Thanks for taking the time
to connect and discuss the issue.  During my phone conversation I did not get the 'neutral' perspective on
the issue I had anticipated.  I felt as if Jessica made excuses for the behavior and at one point gave her
personal opinion on how she didn't think Warren would not do something like that intentionally. The fact
still remains, I still was never given a reason on why I was the only coordinator unable to work from
home.  I look forward to our conversation.

Kind Regards,

**Annette Chisholm**

`PwC | Administrative Support Concierge`
`Office:                | Cell:`
`Email:`
`PricewaterhouseCoopers LLP`
`4040 W Boy Scout Blvd, Tampa FL 33607`


`Thoughts don't need paper to take shape`

